**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **BILLY FARRIS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 6:17-cv-00301-RWS** |
| | § | |
| **BEN E. KEITH COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |

## DEFENDANT'S MOTION TO SHOW CAUSE FOR FORGERIES AND PERJURY

Defendant Ben E. Keith Company ("BEK") files this Motion to Show Cause regarding forgeries and perjury perpetrated by Plaintiff Billy Farris ("Farris") and states:

### I.

### OVERVIEW

On October 25, 2016, Farris filed this wrongful termination suit in Marshall, Texas[1] against BEK, his former employer.  Farris alleged (1) race discrimination under Title VII and Section 1981 (Count I); and (2) retaliation under the Fair Labor Standards Act (Count II). [Doc. 1, ¶¶ 26-29.]  BEK terminated Farris's employment on October 20, 2015, following a series of insubordinate acts at work.

### II.

### THE DECLARATIONS

On April 20, 2017, Plaintiff filed his Notice of Filing of Declarations [Doc. 22], to which he attached four declarations (collectively, the "Declarations") [Doc. 22-1] that he

---

[1] BEK moved to transfer this case to the Tyler Division because there is no connection to Marshall, Texas [Doc. 8.] Plaintiff lives in Palestine, Texas, and the BEK facility where Plaintiff worked is also in Palestine, which is within the Tyler Division of the Eastern District of Texas.  The Court granted that Motion on May 15, 2017.  [Doc 28.]

claims support his allegations.[2]  Three of the Declarations are from former BEK employees, all of whom had been terminated from BEK between 2008 and 2014 (well before Farris's termination in October 2015).   The Declarations from ex-employees included one from Gerald McKinley ("McKinley Declaration") [Doc. 22-1, p. 5], who purportedly signed his Declaration on April 18, 2017, and one from Troy McNaughton ("McNaughton"). [Doc. 22-1, p. 3.]

On May 20, 2017, Plaintiff filed his Amended Complaint [Doc. 25], to which he again attached the same four Declarations, including another copy of the McKinley Declaration. [Doc. 25-1, p. 5.]  The Amended Complaint asserted the same facts and two legal claims as the original Complaint, but now referenced the Declarations in support.  [Doc. 25.]

On June 27, 2017, Plaintiff filed his Second Amended Complaint [Doc. 40], again attaching and referencing all the Declarations — including the McKinley Declaration — [Doc. 40-1, p. 5] and again included the same factual allegations and two legal claims of discrimination and FLSA retaliation that Farris initially pled.

### III.

### PLAINTIFF'S DEPOSITION[3]

On May 18, 2017, BEK deposed Plaintiff.  Of particular significance to this Motion, Farris testified specifically as follows regarding how he obtained the Declarations:[4]

---

[2] Farris filed the Notice alone, *i.e.,* not in connection with, or as part of, any other pleading or per any deadline.

[3] This Motion is supported by the Appendix filed concurrently with it, which includes deposition excerpts and exhibits, declarations, and other relevant exhibits. References to the materials contained in the Appendix are indicated by "APP.", followed by the page number to which reference is made.  Unless otherwise indicated, all emphases are supplied by counsel.

[4] In his deposition, Plaintiff conceded that the allegations in these Declarations were all based on opinion, but not fact.  (APP. 5-10.)

---

Q.   And — and the gentlemen who you got the declarations from, when did you talk to them about your deposition?

A.   Probably about two weeks prior to this.

Q.   Okay.  How often do you talk to them?

A.   Maybe once every two to three weeks.

Q.   Did you meet — you and your lawyer together on those declarations or did you —

A.   No.

Q.   How did that come about?

A.   As far as having to detain (sic) him?

Q.   Yeah.

A.   We talked and I asked would they be willing to talk about — in a declaration about the things they experienced and then come in.

**Q.   Okay.  And then where — did they come into Mr. Whitehurst's office and sign them?**

**A.   No, I met them at a disclosure place.**

**Q.   At a where?**

**A.   I met them at a prior place — well, actually at my house.**

**Q.   Okay.  So they came to your house to sign the declaration?**

**A.   Yeah.**

**Q.   Did they all come together?**

**A.   No.**

**Q.   At different times?**

**A.   At different times.**

Q.   And who put the content of the affidavit together?

A.   I don't understand that question.

Q.   You know the words be on it, who decided the words came out on the page?

A.   The words came out of their mouth.

Q.   Okay.

A.   — and so they —

Q.   And so they all said the exact same identical thing?

A.   Same thing.

Q.   Even used the exact same choice of words?

A.   I guess.

Q.   You're not sure?

A.   Yes.

Q.   Yes?

A.   Yes.

(APP. 2-4.)

## IV.

## <u>MCKINLEY'S DEPOSITION</u>

On July 26, 2017, BEK deposed McKinley, including regarding his Declaration.  His testimony on that subject is revealing and troubling:

Q.   Do you have Exhibit 1 [the McKinley Declaration] in front of you?

A.   Okay.

**Q.   Did you sign that?**

**A.   No.  That's not my handwriting. I don't sign Gerald.  I sign Jacquez.**

**Q.   You didn't sign Exhibit 1?**

**A.   No.  That's not my handwriting.**

Q.   Okay.  Very good.  Interesting.  Are you troubled to learn that somebody has signed your name to —

A.   Yes, I am.

Q.   — Exhibit 1?

A.   — because that's not my — I don't sign my name like that.

**Q.   Well, I'll tell you, Mr. Whitehurst filed these of record with the Federal Court.  But you're telling us under oath, no question about it, "I didn't sign Exhibit 1", —**

**A.   No.**

**Q.   — "That's not my signature"?**

**A.   No.**

Q.   Okay.

A.   I don't sign Gerald.  I sign Jacquez.

             *       *       *

**Q.   Mr. Farris — did Mr. Farris ever discuss the content of Exhibit 1 with you?**

**A.   No.**

**Q.   Did he ever tell you that there was a declaration with your name on it?**

**A.   No.**

Q.   All right.  And we don't have to do a handwriting sample because you know you didn't sign Exhibit 1, because that's not your signature, you were never presented it, and that's not how you sign your signature; true?

A.   Right.

Q.   True?

A.   Right.

(APP. 14-21.)

## V.

## THE "AMENDED" MCKINLEY DECLARATION

On July 28, 2017, Plaintiff's counsel served an Amended Declaration of Gerald McKinley ("Amended McKinley Declaration").  (APP. 22-23.)  Curiously, although Farris titled this pleading an "*Amended* Declaration," the Declaration's content is *verbatim identical* (including typographical errors) to the original McKinley Declaration.   This raises an interesting question:  Why did Farris file an "Amended" McKinley Declaration containing the exact same content as the original?   The side-by-side comparison between the two signature blocks of these declarations tells the story:

### Original McKinley Declaration Signature

I declare under penalty for perjury that the foregoing is true and correct.

Executed on this _____ 18ᵗʰ _____ day of April, 2017.

Gerald McKinley

### Amended McKinley Declaration Signature

I declare under penalty for perjury that the foregoing is true and correct.

Executed on this _____ 27 _____ day of July, 2017.

Gerald McKinley

(APP. 21-23.)

Presumably, Farris tendered the "Amended" McKinley Declaration to show that McKinley actually signed a declaration, and that unlike the original McKinley Declaration, it is not a forgery.[5]  In other words, "no harm, no foul."  Not so.

That the content of these Declarations is identical at a minimum simply confirms: (1) the forgery of the original McKinley Declaration (filed three separate times with the Court); (2) that Farris is the likely forger, as he testified that he secured McKinley's signature on that original declaration; and (3) that Farris lied in his deposition when he testified that he met with McKinley at his home and obtained McKinley's signature on that Declaration.

But wait . . . there's more.

## VI.

## THE McNAUGHTON AUTHORIZATION

On July 17, 2017, counsel for Farris wrote BEK's counsel requesting complete copies of the personnel files of one current, and four former BEK employees, including McNaughton.  (APP. 24.)  In support of, and included with this letter, counsel for Farris provided BEK with a series of signed documents entitled "Authorization for Release of Records — Employment," including one purportedly signed by McNaughton ("McNaughton Authorization").  (APP. 25-26.)  However, like McKinley, McNaughton has also advised that he *never* signed any authorization relating to BEK, and the signature on this Authorization is also a forgery.  (APP. 27, ¶¶ 2-4, 28-30.)

---

[5] BEK questions whether McKinley actually signed the Amended McKinley Declaration because, as he testified, McKinley uses "Jacquez," not "Gerald," when he signs formal documents.  (APP. 15-16.)  Here, the Amended McKinley Declaration is signed as "Gerald" and not "Jacquez."  (APP. 23.)

Again, a simple comparison of the signature blocks between the McNaughton
Authorization as supplied by Farris, and McNaughton's recently supplied Forgery
Declaration disavowing his signature on the McNaughton Authorization, speaks volumes.

## Authorization

Furthermore, **"BEN E. KEITH"** and/or agent thereof is authorized to discuss my
employment history with said attorney's, agents and representatives.

A copy or facsimile transmission of this authorization has the same force and effect as an
original.

/Troy McNaughton

## Forgery Declaration

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___7___ day of August, 2017.

(APP. 27, 29.)

## VII.

## ARGUMENT & AUTHORITIES

As the court in *Sarco Creek Ranch v. Greeson,* 167 F. Supp. 3d 835, 838 (S.D. Tex.
2016) aptly explained:  "The justice system thus depends on the parties filing authentic
exhibits.  And, of course, when parties appear in court, the system depends on them telling
the truth."  These principles likewise apply in the context of perjured deposition testimony.

---

*Brown v. Oil States Skagit SMATCO*, 664 F.3d 71 (5th Cir. 2011) (affirming dismissal of a discrimination suit as a sanction based on perjured deposition testimony).

A.     <u>**The Court's Authority to Sanction.**</u>

In addition to the various mechanisms under the Federal Rules of Civil Procedure for the imposition of sanctions against a party or counsel,[6] district courts also have their own inherent authority to issue sanctions on parties and their counsel when appropriate. *Sarco Creek*, 167 F.3d at 845 ("The Court also has inherent authority to impose sanctions when other rules do not provide an adequate remedy. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111. S.Ct. 2123, 115 L.Ed. 2d 27 (1991) . . .  Reliance on this inherent authority is appropriate when there is a 'wide range of willful misconduct' implicating multiple rules . . . or when the conduct at issue is altogether 'beyond the reach of the rules.").[7]

B.     <u>**Sanctions Under the Court's Inherent Authority.**</u>

As the *Sarco Creek* court noted, the standard for determining sanctions under the Court's inherent authority is higher than those under, for example, Rule 37 or other sources. The court must make a finding of bad faith and, while some courts have held that the court must make that determination based on clear and convincing evidence, the Fifth Circuit has suggested that might not be required. *Sarco Creek*, 167 F.3d at 845, citing *White v. Reg'l*

---

[6] *See, e.g.*, Fed. R. Civ. P. 11 (bad faith or frivolous pleadings); 16(f) (failure to appear or be prepared at a scheduling or pretrial conference); 26(g) (signature on discovery pleadings); 30(g) (conduct during or regarding depositions); 37 (failure to make disclosures or comply with a discovery order); 41(b) (failure to prosecute); and 56(h) (summary judgment affidavits or declarations filed in bad faith).

[7] BEK does contend that the allegations in Farris's Original Complaint and subsequent amendments do violate Rule 11, but those are not the subject of this Motion, and have been the subject of numerous, separate communications with Farris's counsel on this point.  For just one example, in his Original Complaint, Farris pled in paragraph 14 that, "Non-African American employees were treated more favorably at work by the Defendant, than African American employees.  Some of the Non-African American employees were Ray Wortham, Alex Smith, Jimmy Gaines, **Calvin Lester,** Troy McNaughton, Carlos Castro and Eric Castro."  As Farris testified in his deposition, Calvin Lester *is* African American.  (Farris Dep., pp. 164:13-166:1;  168:16-170:16;  209:13-21; APP. 5-7; APP. 8-10; APP. 11.)  While this "fact" has always been known to Farris, even after his deposition, Farris continued to file pleadings containing this allegation.  (*See*; Doc. Nos. 25; 40 at ¶ 14.)

---

*Adjustment Bureau, Inc.* 632 Fed. Appx. 234, 236, n. 1, No. 10723, 2016 WL 373322, at *2 n. 1 (5th Cir. Jan. 29, 2016) (suggesting that the higher burden of clear and convincing evidence is not always required).  In either case, the standard has been met.

## C.    __Farris's Bad Faith__.

Here, there can be little question that Farris has acted in bad faith.

### 1.    __The Perjury__.

Farris testified that he personally procured all the Declarations — including the McKinley Declaration — at his home, at separate times, and from each of the four declarants.  (APP. 2-4.)  McKinley, however, testified that he never went to Farris's home to sign his Declaration, never saw the Declaration, and thus never signed it.  (APP. 15-16.) There can be no question that Farris committed perjury in his testimony on this subject.[8]

Based on his testimony, Farris then gave the Declarations to his counsel — including the McKinley Declaration.  Since Farris never procured McKinley's signature on the Declaration, at a minimum he knew it did not contain McKinley's signature and, more likely, is the person who actually forged McKinley's name to that Declaration.  Farris then allowed all the Declarations, including the forged McKinley Declaration, to be filed repeatedly with this Court.  [Doc. Nos. 22-1, 25-1, and 40-1.]  At no point in time did he move to withdraw the McKinley Declaration or seek to correct it, knowing full well that McKinley never signed it.

In *Brown*, the Fifth Circuit affirmed the dismissal of the case as a sanction under the district court's inherent authority for perjured deposition testimony.  The plaintiff in *Brown* sued the defendant (as has Farris here) for race discrimination under Title VII.  In his

---

[8] Certainly it is possible that McKinley could have lied in his deposition, but if so, why would he then have signed (assuming he did) an Amended Declaration dated after his deposition?

deposition in that discrimination suit, he testified that he quit his job "solely because of racial harassment." *Id.* at 73-74.  However, in a prior personal injury action, he also testified that he left his job because of back pain related to a car accident.  The district court correctly determined that this conflicting (and irreconcilable) testimony amounted to perjury and dismissed his suit with prejudice as a sanction.  The district court determined that a lesser sanction was not proper because the plaintiff's "deceits were substantial, deliberate, and went to the heart of the case.  *And since not everyone will be caught, the penalty needs to be severe enough to deter." Id.* at 75, quoting *Hull v. Municipality of San Juan*, 356 F.3d 98 (1st Cir. 2004) (emphasis in original).

The same logic applies here.  Farris committed perjury when he testified that he personally met with McKinley at his home and obtained the Declaration.  McKinley did not go to Farris's home, nor did he sign the Declaration and give it to Farris.  Thus, dismissal sanctions are warranted.

2. **The Two Forgeries.**

   a. ***The McKinley Declaration.***

The forgery of the McKinley Declaration is no less abhorrent.  For the reasons explained above, there can be no question that such conduct was intentional, and that Farris (and his counsel) view the Declarations as key to merits of his claims, having repeatedly filed them with the Court, and having obtained (presumably) an Amended McKinley Declaration.

   b. ***The McNaughton Authorization.***

Likewise, in his apparent desperation to advance his claims, Farris also supplied counsel for BEK with the forged McNaughton Authorization, seeking a release of McNaughton's personnel file without McNaughton's knowledge or permission. Farris has

pressed for the release of personnel files of other employees throughout this suit and clearly believes they are significant. Like most, this file contains a plethora of personal (and personally identifying) information about McNaughton, such as pay, social security number, job performance, medical issues, etc.  Accordingly, a sanction by this Court for these multiple forgeries is also warranted as McNaughton has never given his permission for the release of his personnel files with BEK. (APP. 27.)

*D'Amato v. Orlando Pro Hockey Operations, LP*, No. 6:15-CV-826, 2015 WL 9266900 (S.D. Tex. Dec. 14, 2015) is instructive on the proper sanctions for forgeries.  In *D'Amato*, the plaintiff filed suit *pro se*.  In response to discovery requests, the plaintiff produced multiple forged declarations.  Based on the forged declarations supplied by plaintiff, the court transferred the case.  At no time did the plaintiff inform the court of the forgeries.  The defendant later discovered the forgeries and presented evidence of the same to the court.  In dismissing the case, the court found that the submission of such forgeries was bad faith and warranted dismissal as a sanction:

> The Court finds that it possesses the authority under Federal Rule of Civil Procedure 41(b) and the inherent authority to dismiss the Complaint with prejudice due to Plaintiff's fraudulent conduct.  *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985).  First, there is a clear record of misconduct by Plaintiff.  Plaintiff knowingly submitted two forged Declarations with forged Notary signatures and falsified federal tax forms to support his claims against Defendants.  Further, lesser sanctions are inappropriate in the instant case.  Since the filing of Defendants' motion to dismiss revealing Plaintiff's fraud on the Court, Plaintiff has not responded to the Defendants or the Court's Orders and has clearly abandoned his claims.  Moreover, a lesser sanction would not suffice for such a flagrant fraud on the Court.  As a matter of public policy, the Court will not tolerate such conduct from litigants who appear before it.  As the Eleventh Circuit has stated, 'Dismissal with prejudice … an extreme sanction, but it is justified in extreme circumstances.'  *Zocaras*, 465 F.3d at 485.  Defendant's motion to dismiss is due to be granted and the Complaint dismissed with prejudice.

*Id.* at *2.

Here, had BEK released McNaughton's personnel files based on his forged authorization, it would have likely violated McNaughton's rights, and could have been subjected to liability for having done so.  Thus, a dismissal sanction is warranted for Farris's repeated forgeries.

## D.    <u>The Role of Counsel</u>.

And what of Farris's counsel and his role in this?  Again, the court's analysis and holding in *Sarco Creek*  is instructive.  BEK assumes (for now) that counsel for Farris was unware that his client had forged the McKinley Declaration, or that Farris had perjured himself on that topic in his deposition, at least until McKinley testified on July 26th. Likewise, BEK assumes Farris's counsel was not aware that the McNaughton Authorization was also forged (although even a cursory comparison of McNaughton's signatures between his Declaration and Authorization should have put Farris's counsel on notice of some issue, particularly in light of the forged McKinley Declaration).

That said, the response of Farris's counsel is not without concern.  First, when confronted about the forged declaration immediately after McKinley's deposition, and again the next day, Farris's counsel seemed to show little concern, and indicated that he did not view his client's conduct as problematic.  Second, the only response of Farris's counsel thus far has been to secure the "Amended" Declaration of McKinley, which (as noted above) is identical to the original, except for the signature and date, only confirming the forgery of the original McKinley Declaration.

Third, and perhaps most noteworthy, Farris's counsel has taken *no* action with this Court to withdraw the McKinley Declaration or from his representation of Farris since McKinley testified of the forgery.  *See* Tex. R. Prof. Conduct, § 3.03(a)(5) ("A lawyer shall not knowingly offer or use evidence that the lawyer knows to be false.").  Having filed this

forged Declaration three separate times, it is incumbent upon Farris's counsel to both bring this to the Court's attention and rectify the matter to the extent possible.  As the *Sarco Creek* court held, Tex. R. Prof. Conduct, § 3.03(b) requires that, "If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall make a good faith effort to persuade the client to authorize the lawyer to correct or withdraw the false evidence.  If such efforts are unsuccessful, the lawyer shall take reasonable remedial measures, including the disclosure of the true facts."  *See id.*, Section 3.03, Comment 8 ("When a lawyer learns that the lawyer's services have been improperly utilized in a civil case to present false testimony or other material into evidence, the rule generally recognized is that lawyer must disclose the existence of the deception to the court or other party if necessary to rectify the deception.") *Id.* at 851-52.

Here, Farris's counsel has done nothing to fulfill any of these obligations, and neither overtly conceded the deception relating to McKinley's Forged Declaration (except by securing an "amended" declaration) or advised the Court or moved to with draw the forged instrument. If counsel's response to these issues fulfills an attorney's obligation under the Texas Rules or Professional Conduct and *Sarco Creek*, BEK would be surprised.

## VIII.

## <u>CONCLUSION AND RELIEF REQUESTED</u>

That Farris has committed perjury and multiple forgeries is not seriously in dispute. The deposition testimony, McKinley Declaration, and Amended McKinley Declaration make that fact clear and convincing, as does the McNaughton Declaration regarding his forged Authorization.  This conduct was in bad faith, and constitutes a blatant fraud on this Court and BEK, and is clearly sanctionable under the Court's inherent authority.   Any lesser sanction would be insufficient given the gravity and repetitiveness of the conduct.   BEK

therefore requests that the Court sanction Farris by dismissing his Complaint or, at a minimum, awarding BEK its fees and costs associated with this Motion.[9]

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By:    /s/ Gary D.  Eisenstat
      GARY D.  EISENSTAT
      Texas State Bar No. 06503200
      gary.eisenstat@ogletreedeakins.com
      ANDREW J.  MAGID
      Texas State Bar No. 24092744
      aj.magid@ogletreedeakins.com

Preston Commons West
8117 Preston Road, Suite 500
Dallas, Texas  75225
(214) 987-3800 (Phone)
(214) 987-3927 (Fax)

**ATTORNEYS FOR DEFENDANT
BEN E. KEITH COMPANY**

## CERTIFICATE OF CONFERENCE

I hereby certify that on August 10, 2017, I attempted to reach Plaintiff's counsel, Bob Whitehurst, via telephone and email regarding the merits of this Motion, but received no response from Mr. Whitehurst

  /s/ Gary D. Eisenstat
GARY D. EISENSTAT

---

[9] BEK leaves it to the Court to determine any culpability of Farris's counsel on these issues and what, if any, sanctions are appropriate in that regard.

---

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 10, 2017, a true and correct copy of the foregoing document was served via the Court's e-filing system to all parties of record.

_/s/ Gary D. Eisenstat_
GARY D. EISENSTAT

30697550.1