IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

**BILLY FARRIS**

vs.                                    CIVIL ACTION No: 6-17-cv-00301-RWS
                                       JURY REQUESTED

**BEN E. KEITH COMPANY**

**PLAINTIFFS RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION FOR SHOW CAUSE FOR FORGERIES AND PERJURY**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiffs respectfully asks the court to deny Defendant's Motion for Show Cause for Forgeries and Perjury, and would show the court as follows:

I.

The third amended original petition before the court at this time, filed on August 8, 2017, raises allegations of race discrimination, violations of the Family Medical Leave Act, violations of the Fair Labor Standards Act, and retaliation for complaining about not being paid correctly in violation of the Fair Labor Standards Act.  The amended declaration of Gerald McKinley is also found attached to the Third Amended Petition, being part of Exhibit A that was attached to the Third Amended Petition.  The document being dated July 27, 2017.   The amended docket control order entered on August 10, 2017, allows the parties until October 16, 2017 to amend their pleadings.

II.

Attached hereto as Exhibit "A" is the affidavit of Billy Farris, stating in part that he was an employee of Ben E. Keith Company in Palestine, Texas, that he knew Gerald McKinley and Troy McNaughton from working at Ben E. Keith, that he did in fact sign certain documents for

them, and that is was his belief that it was permissible for him to do so, if he had received permission to do so.   Gerald McKinley and Troy McNaughton, had in fact signed other documents for Billy Farris in this case.   (See Exhibit "B" attached hereto).

III.

If a person signs another's name to a document with authority to do so, there is no forgery. *In re Estate of Flores*, 76 S.W.3d 624, 630 (Tex. App.-Corpus Christi 2002, no pet.)   The act of forgery is defined as altering, making, completing, executing, or authenticating a writing so that it purports to be the act of another who did not authorize that act.   *Parker v. State*, 985 S.W.2d 460, 463 (Tex.Crim.App.1999).   It was the belief of Plaintiff that he did have their permission.

IV.

Defendant received the authorizations from several employees regarding the release their records.   (See Exhibit "C")   Defendant has failed to produce any of the records as set out in the authorizations, that Defendant now complains of.    Defendant is now seeking a "death penalty sanction" against the  Plaintiff, and requiring Plaintiff to pay costs and attorney fees.    Rule 37(b) of the Federal Rules gives courts broad power to impose sanctions for "fail[ing] to obey an order to provide or permit discovery." FED. R. CIV. P. 37(b)(2)(A); see *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488-89 (5th Cir.2012). Sanctions under the Rule include any remedies necessary to deter the misconduct, and can be as severe as dismissal of a case. *Smith & Fuller*, 685 F.3d at 488.    The Court also has inherent power to impose sanctions when other rules do not provide an adequate remedy. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ("[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither

the statute nor the Rules are up to the task, the court may safely rely on its inherent power."). Reliance on this inherent authority is appropriate when there is a "wide range of willful conduct" implicating multiple rules, *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1418 (5th Cir.1995), or when the conduct at issue is altogether "beyond the reach of the rules," *Chambers*, 501 U.S. at 51, 111 S.Ct. 2123. Using the court's inherent power in such situations promotes efficiency and avoids the needless satellite litigation that would occur if the court had to apply the rules to each discrete occurrence separately before invoking its inherent power. *Woodson*, 57 F.3d at 1418.  To reward Defendant with a death penalty sanction, would allow defendant to circumvent the rules of discovery and disclosure, and award Defendant for its bad deeds.

V.

Defendant has failed to include all the testimony from the deposition from Mr. McKinley, in its Motion for Show cause for some unknown reason.  (See Exhibit "D" attached hereto).

From the deposition of Jacquez McKinley:, pg. 94, 95, l. 16-25, l. 1-7.

```
Q. (By Mr. Whitehurst) Okay. Now, you were out
17 there, and it's my understanding you had no access to
18 any records?
19 A. No, sir.
20 Q. So, all of these questions he's asking you,
21 there's no way you're going to know for sure.
22 A. No, sir.
23 MR. EISENSTAT: Objection; leading.
24 Q. (By Mr. Whitehurst) Okay. And there wasn't a
25 big sign out there that said "Screw the niggers". You
didn't see anything like that, did you?
2 A. No, sir.
3 Q. But that's the way you felt, wasn't it?
4 A. Yes.
5 MR. EISENSTAT: Objection; leading.
6 Q. (By Mr. Whitehurst) Is that right?
7 A. Yes, sir.
```

Defendant also failed to include all the declarations of employees at the facility in Palestine, Texas, not only that of Gerald McKinley.   (See Exhibit "E" attached hereto).

VI.

Defendant has continually made the representation that Angela Howell was the office manager.  (See Exhibit "F" attached hereto).   Ms. Howell even made the representation that she was a manager in the document she signed on October 20, 2015, regarding the termination of Plaintiff.  (See Exhibit "G" attached hereto).   Ms. Howel also made the representation when she stated that Plaintiff was a $.01 over.  (See Exhibit "H" attached hereto).   The fact is she is a secretary, not an office manager.   (See Exhibit "I" attached hereto).    From the Deposition of Angela Howell, pg. 4, l.  18-19 (See Exhibit "J" attached hereto)

Q. And are you salary of hourly?

A. Hourly.

.  From the Deposition of Angela Howell, pg. 43, l.  20-21 (See Exhibit "J" attached hereto)

A.  I am not familiar with the policies on how to fire an employee.

VII.

Attached hereto as Exhibit "K" is a timecard report for Plaintiff from August 1, 2015 to October 17, 2015.   These records indicate that Plaintiff usually clocked in around 5:30 a.m. to 6:00 a.m., each work day.    There is no indication that Billy Farris clocked in on October 20, 2015, looking at Exhibit "K".    Plaintiff   was at work on October 20, 2015, on  the day he was terminated.    Defendant failed to pay Billy Farris for the time he was at work in violation of the Fair Labor Standards Act, whether it be thirty (30) minutes or two (2) hours.    Defendant failed and/or manipulated the records to show that Billy Farris did not clock in on October 20, 2015.

These records came totally from the defendant and now Defendant seeks a "death penalty sanction" disposing of the entire case. That is a little extreme for someone who thought he could sign a documents for someone else, even though said action was mistaken.

VIII.

Plaintiff believes the facts of the case are in part are as follows:

Defendant failed to respond to the Texas Workforce Commission as to the reason and/or reasons behind the termination of Billy Farris. (See Exhibit "L" attached hereto).

From the deposition of Andrew Gregory, pg. 23, 24, l. 15-18, l. 12-16 (See Exhibit "M" attached hereto)

```
Q. Okay. But as far as you know, no one from
16 the corporate office contacted the facility of
17 Ben E. Keith about the unemployment benefits for
18 Mr. Farris?
19 A. I -- I have no memory. They could have,
20 sure.

A. Yeah, no, I -- I'm sorry. I misunderstood
13 the question.
14 Q. Okay. That's --
15 A. The unemployment claim, yes, I was notified
16 of.
```

Either the documents involving the write ups regarding Billy Farris did not exist when contacted by the Texas Workforce Commission, or that Andrew Gregory failed to respond to the Texas Workforce Commission costing the company thousands of dollars not $.01.

A black man is terminated for being a $.01 short, and a white man, Andrew Gregory, that cost the company thousands of dollars, received no disciplinary action.

Plaintiff has requested the personnel file of Andrew Gregory.

Defendant has refused to produced the personnel file of Andrew Gregory.

From the deposition of Andrew Gregory, pg. 120, 121, 122, l. 12-25, 1-25, 1-11 (See Exhibit "M" attached hereto)

Now, if Mr. Farris had not seen any of these documents prior to his termination, the
13 pictures, the write-ups, all this other stuff, would
14 that be a violation of the policy of Ben1E. Keith?
15 A. If he....
16 (Cellular phone vibration.)
17 MR. WHITEHURST: You all right?
18 (Reporter response.)
19 Q. (BY MR. WHITEHURST) Go ahead.
20 A. Yes. He's to see every write-up that he's
21 been given.
22 Q. I understand that. But if he had not seen
23 the write-ups, the pictures, and all that other stuff
24 that you're talking about --
25 A. If he had not seen them --
Q. Yes.
2 A. -- yes, it would be. But he had -- I mean,
3 that's how it's handled.
4 Q. I understand.
5 A. Each individual write-up is handled the
6 same --
7 Q. It just wouldn't be fair to the employee.
8 A. Absolutely.
9 Q. I mean, you're not trying to railroad
10 anybody or anything of that nature.
11 A. (Shakes head.)
12 Q. Right?
13 A. Right.
14 Q. Is that right?
15 A. Absolutely.
16 Q. Okay. And if he doesn't know what's done,
17 if he hadn't seen the pictures, he hadn't seen the
18 documents, would you consider that, in your mind,
19 railroading?
20 A. If he hadn't. But I'm not aware that he --
21 Q. I understood that.
22 A. Right.
23 Q. But you're the general manager out there --
24 A. Right.
25 Q. -- and if he had not seen the documents, you
would classify that as railroading.
2 A. I don't classify any -- I don't know what --

3 that's not terminology I would use.
4 Q. You would classify that as not following
5 company policy.
6 A. Okay.
7 Q. Don't let me put words in your mouth. If
8 that's wrong, say so.
9 A. It would be wrong.
10 Q. It would be wrong?
11 A. Yes.

  From the deposition of Andrew Gregory, pg. 11, l. 22-25 (See Exhibit "M" attached hereto)

Q. (BY MR. WHITEHURST) I need to make
23 sure that -- you are involved in the termination of
24 Mr. Farris; is that right?
25 A. Involved, no.

  From the deposition of Andrew Gregory, pg. 15, l. 16-20 (See Exhibit "M" attached hereto)

Q. (BY MR. WHITEHURST) Besides Mr. Williamson,
17 was anyone else directly involved in the termination
18 of Mr. Farris?
19 A. No one was directly involved. There were
20 people that witnessed

  From the deposition of Andrew Gregory, pg. 16, l. 14-19 (See Exhibit "M" attached hereto)

Q. But you sign off on it.
15 A. I witness it after the termination.
16 Q. Okay.
17 A. I do not sign off beforehand.
18 Q. So you were not in the room.
19 A. No, sir

  From the deposition of Andrew Gregory, pg. 19, l. 3-8 (See Exhibit "M" attached hereto)

It is the policy of Ben E. Keith to be
4 truthful and honest to all of its employees?
5 A. Yes.
6 Q. Is it the policy of Ben E. Keith to give all

7 employees an equal chance?
8 A. Yes, sir

  From the deposition of Andrew Gregory, pg. 32, l. 12-13(See Exhibit "M" attached hereto)

A. Once again, these are documents I signed
13 after the fact. I was not there.

  From the deposition of Andrew Gregory, pg. 34, l. 5-9 (See Exhibit "M" attached hereto)

Q. Okay. But I guess my question is -- well,
6 the answer to my question is--you correct me if I'm
7 wrong--you had not talked to any of these individuals
8 about Mr. Farris prior to October 20, 2015.
9 A. Not to my recollection.

  From the deposition of Andrew Gregory, pg. 39, l. 5-15 (See Exhibit "M" attached hereto)

Q. Did you check the records to see if
6 Mr. Farris was actually off one penny?
7 A. I didn't check the records. I saw -- Angela
8 showed me.
9 Q. Okay. And did Mr. -- to your knowledge,
10 only to your knowledge, did Mr. Williamson check the
11 records?
12 A. I have no knowledge about that.
13 Q. Okay. Or any of the other managers that
14 we've talked about here today?
15 A. No knowledge about that.

  From the deposition of Andrew Gregory, pg. 41, l. 22-23 (See Exhibit "M" attached hereto)

Q. So you have no black managers at the
23 facility in Palestine?
24 A. No black area sales managers or general
25 manager or assistant manager.

  From the deposition of Andrew Gregory, pg. 45, l. 4-7 (See Exhibit "M" attached hereto)

Q. Right. But he didn't have access, as far as

5 documents -- any of these documents that we're looking
6 at, he didn't have access to those documents, did he?
7 A. Not that I'm aware of.

Keith Williamson made the decision to terminate Billy Farris.

The decision of Keith Williamson was based in part what was told to him by Angela Howell, the secretary/office manager.

The employee files and records are kept in the office of Ms. Angela Howell.

Angela Howell stated that Billy Farris was a $.01 over.

Angela Howell did not show Billy Farris any documents that she sent to Keith Williamson.

No area sales manager checked the figures of Angela Howell to insure that Billy Farris was in fact a $.01 short.

The general manager did not check the figures of Angela Howell to insure that Billy Farris was in fact a $.01 short.

No person asked any questions at the termination of Billy Farris on October 20, 2015.

Ben E. Keith has failed to produce all rules and regulations of its employees in this lawsuit.

Rule 3.1 of the policy manual contains the following provision "fraud committed by knowingly accepting pay for operations not performed or time not worked."

Billy Farris complained about his pay not being correct in early October of 2015.

Angela Howell was responsible for the pay of the employees being correct.

From the deposition of Andrew Gregory, pg. 141, l. 11-15, (See Exhibit "M" attached hereto)

Did you know that Mr. Farris went out
12 on FMLA in August of 2015?

13 A. Yes.
14 Q. Okay. What was wrong with him?
15 A. Stress.

105.  From the deposition of   Andrew Gregory, pg. 144, l. 1-6  (See Exhibit "M" attached hereto)
Q. (BY MR. WHITEHURST) Procedure. Do you have
2 other individuals that have gone off on FMLA?
3 A. I think, in my career here, we've had only
4 three, maybe four, gone on FMLA.
5 Q. And for the record, what is FMLA?
6 A. The Family Medical Leave Act.

106.  From the deposition of   Andrew Gregory, pg. 146, l. 5-15 (See Exhibit "M" attached hereto)

Q. You said there's four people that you've
6 been there that have gone off on FMLA -- or had FMLA.
7 Not gone off, had FMLA. Is that right?
8 A. To my knowledge.
9 Q. Right. And that's Billy Farris.
10 A. Okay.
11 Q. Is that right?
12 A. Okay.
13 Q. Is he counted as one of the four?
14 A. Yes.
15 Q. Kalesi Bhatti

107.  From the deposition of   Andrew Gregory, pg. 147, l. 7-10 (See Exhibit "M" attached hereto)

Q. (BY MR. WHITEHURST) Were the other two
8 still employed?
9 A. Were the other two still employed? No. One
10 of them was Gerald McKinley.

Andrew Gregory has made no changes to his deposition of May 19, 2017, in the case of Billy Farris v. Ben E. Keith Company.

Seventy five percent (75%) of the individuals that went out on FMLA were terminated.

Seventy five percent (75%) of the individuals that went out on FMLA were  African American.

Billy Farris is African American.

Kelissa Battee is African American.

Gerald McKinley is African American.

Defendant has refused to produce the records of Gerald McKinley.

Angela Howell received no training on race discrimination as an employee of defendant.

IX.

**SLIM TO NONE**

On July 7, 2017, Defendant filed its first supplemental disclosures, with the witnesses being contacted by and through the office of defendant's attorney, and its rebuttal trial list (See Exhibit "N" attached hereto). On the same day a letter was forwarded to said attorney requesting the last known address and phone number, under Rule 4.02 of the State Bar Rules. (See Exhibit "O" attached hereto). On July 10, 2017, a letter was forwarded to the attorney for defendant requesting a copy of disciplinary actions and/or awards that were to these seven (7) new witnesses. (See Exhibit "P" attached hereto). On July 20, 2017, the defendant responded in part "While we have informed them that you may wish to speak to them and of your right to do so, they have indicated their preference not be contacted by your office and that any inquires should be directed to our office. (See Exhibit "Q" attached hereto). The chances of these new witnesses willing to speak freely are slim to none, no doubt caused by the intimidation by the defendant. For all seven (7) to have indicated their preference, would have meant that defendant contacted these witnesses about the lawsuit. What was said is unknown, but apparently something was said for them to decide that contact be made through the office of the attorney for defendant.

X.

Around the middle of July of 2017, Defendant supplemented with four employees disciplinary action that was taken against them for playing golf on company time in company vehicles and using company fuel for those vehicles. The date of these documents was October 26, 2012, and the same managers Keith Williamson and Andrew Gregory were involved. (See Exhibit "R" attached hereto). These documents had existed for years, and defendant only produced these documents shortly before the previous docket control order of July 29, 2017, being the discovery deadline.

One of the purposes of discovery is "avoiding the use of concealment and surprise as trial tactics, making a trial `less a game of blind man's b[l]uff and more a fair contest." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682, 78 S.Ct. 983, 986 (1958)). The federal rules promote broad discovery so that all relevant evidence is disclosed as early as possible, . . . a fair contest, where each party can knowledgeably evaluate the strength of its evidence and chances of ultimate success.'" *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 516 (5th Cir. 1993). The purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case. *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S. Ct. 385, 91 L. Ed. 451 (1947). The primary purpose of discovery is to allow all parties to be prepared to address issues, oral testimony, and documentary evidence to be produced at trial. *Shelak v. White Motor Co.*, 581 F.2d 1155, 1159 (5th Cir. 1978). The rules require that discovery be accomplished voluntarily; that is, the parties should affirmatively disclose relevant information without the necessity of court orders compelling disclosure." *Bush Ranch v. E.I. DuPont Nemours and Co.*, 918 F.Supp. 1524, 1542 (M.D. Ga.

1995), rev'd on other grounds, 99 F.3d 363 (11th Cir. 1996); *Cruz v. United States*, No. 3:09-cv-155-J-25TEM, 2010 WL 2612509 (M.D. Fla, June 25, 2010).  Rule 26 embraces all `relevant information' a concept which is defined in the following terms: `Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.'" *Victor v. Lawler*, 3:08-CV-01374, 2010 WL 2595945, (M.D. Pa. June 24, 2010); see also *United States v. Shaw*, No. 04-2503 RDR, 2005 WL 3418497, (D. Kan. 2005)(stating that relevancy is broadly construed to "as a general proposition, a request for discovery should be considered relevant if there is `any possibility' that the information sought may be relevant to the claim or defense of any party"(quoting *Sheldon v. Vrmonty*, 203 F.R.D. 679, 689-90 (D. Kan. 2001).

Defendant has and continues to play games with the discovery process.  Attached hereto are letters dated March 29, April 5, April 21, June 27, July 7, July 10, July 24, August 1, August 17, and August 20, 2017 to Defendant's attorney in an attempt to resolve discovery disputes that have arisen in this case.  (See Exhibit "S" attached hereto).  Plaintiff is still seeking a large amount of discovery that Defendant continues to refuse to produce.

## CONCLUSION

To now award defendant a blanket dismissal based on a mistaken belief on the part of the plaintiff would seem to be manifestly unjust.  It would only reward defendant for its delay tactics and failure to follow the guidelines set forth in the Eastern District of Texas.

WHEREFORE, plaintiff respectfully requests that the Court enter an order denying defendant's motion for show cause for forgery and perjury and for such other and further relief, at law or in equity, general or special, to which Plaintiffs may show himself justly entitled

       Respectfully submitted,

       _/S/_____
       Bob Whitehurst
       State Bar No. 21358100
       Bob Whitehurst
       5380 Old Bullard Road, Suite 600, #363
       Tyler, Texas 75703
       (903)593-5588
       Attorney for Plaintiff

      <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the above and foregoing motion was forwarded to all attorney of record by filing this document with the CM/ECF systems for the United States District Court for the Eastern District of Texas.

       /S/ Bob Whitehurst
       Bob Whitehurst