IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| BILLY FARRIS § | |
| § | CASE NO. 6:17-CV-301 |
| v. § | |
| § | |
| BEN E. KEITH COMPANY § | |
| § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendant's Motion for Order to Show Cause for Forgeries and Perjury (ECF 60). The Court conducted a hearing on November 7, 2017. Having considered the briefs and arguments of counsel, it is recommended that the motion be **GRANTED**.

**BACKGROUND**

Plaintiff, Billy Farris, filed this lawsuit against Ben E. Keith Company ("BEK") in the Marshall Division on October 13, 2016, asserting an employment race discrimination claim pursuant to Title VII and a retaliation claim. Plaintiff worked at Defendant's facility in Palestine beginning in 2003. He alleges that black employees are paid less for the same work, are refused promotions that are given to less qualified white employees, and are treated less favorably. The case was transferred to the Tyler Division on May 15, 2017.

In his Third Amended Complaint filed on August 8, 2017, Plaintiff additionally asserts that Defendant interfered with his FMLA leave on August 11, 2015 through September 1, 2015 and failed to pay him for work performed on October 20, 2015 in violation of the FLSA. Plaintiff further submits a retaliation claim for the termination of his employment after complaining that he was not paid correctly. Plaintiff's employment was ultimately terminated on October 20, 2015.

## MOTION FOR SANCTION

Pending before the Court is Defendant's Motion to Show Cause for Forgeries and Perjury (ECF 60). Defendant challenges a declaration by Gerald McKinley that was submitted by Plaintiff. The McKinley declaration was first filed by Plaintiff on April 20, 2017. On that date, Plaintiff filed a Notice of Filing Declarations (ECF 22) with four declarations attached, including the McKinley declaration that is dated April 18, 2017. Plaintiff again filed the McKinley declaration with his Amended Complaint on May 20, 2017 and with his Second Amended Complaint on June 27, 2017.

In his deposition, Plaintiff testified that each declarant, including McKinley, came to his home, separately, to sign the declarations. He also testified that he discussed the content of the declaration with each declarant, including McKinley, and that the declarations represent each declarant's statement. Specifically, Plaintiff testified as follows:

Q. Okay. And then where - - did they come into Mr. Whitehurst's office and sign them?

A. No, I met them at a disclosure place.

Q. At a where?

A. I met them at a prior place - - well, actually at my house.

Q. Okay. So they came to your house to sign the declaration?

A. Yeah.

Q. Did they all come together?

A. No.

Q. At different times?

A. At different times.

Q. And who put the content of the affidavit together?

> A. I don't understand that question.
>
> Q. You know the words be on it, who decided the words came out on the page?
>
> A. The words came out of their mouth - -
>
> Q. Okay.
>
> A. - - and so they - -
>
> Q. And so they all said the exact same identical thing?
>
> A. Same thing.
>
> Q. Even used the exact same choice of words?
>
> A. I guess.
>
> Q. You're not sure?
>
> A. Yes.
>
> Q. Yes?
>
> A. Yes.

*See* Defendant's Motion to Show Cause for Forgeries and Perjury, ECF 60-1, at *6–7 (Oral Deposition of Mr. Billy J. Farris, III May 18, 2017 at p. 15 line 5 through p. 16 line 10).

Contrary to Plaintiff's deposition testimony, however, McKinley testified in his own deposition on July 26, 2017 that the signature on his declaration is not his signature. He further testified that he did not discuss the contents of the declaration with Plaintiff. Counsel presented McKinley with a copy of the declaration and the following exchange occurred:[1]

> Q. Okay. All right. Okay. Do you have Exhibit 1 in front of you?
>
> A. Okay.
>
> Q. Did you sign that?

---

[1] *See* Defendant's Motion to Show Cause for Forgeries and Perjury, ECF 60-1, at *19–20 (Oral Deposition of Jacquez Fitzgerald McKinley July 26, 2017 Volume 1, p. 76 line 15 through p. 77 line 13).

> A. No. That's not my handwriting. I don't sign Gerald. I sign Jacquez.
>
> Q. You didn't sign Exhibit 1?
>
> A. No. That's not my handwriting.
>
> Q. Okay. Very good. Interesting. Are you troubled to learn that somebody has signed your name to - -
>
> A.Yes, I am, - -
>
> Q. - - Exhibit 1?
>
> A. - - because that's not my - - I don't sign my name like that.
>
> Q. Well, I'll tell you, Mr. Whitehurst filed these of record with the Federal Court. But you're telling us under oath, no question about it, "I didn't sign Exhibit 1," - -
>
> A. No.
>
> Q. - - "That's not my signature?"
>
> A. No.
>
> Q. Okay.
>
> A. I don't sign Gerald. I sign Jacquez.

After a brief break, the deposition resumed:[2]

> Q. Okay. Mr. McKinley, I don't want to beat this horse completely to death, but the document we've marked as Exhibit 1, today is the first day you've ever seen that document?
>
> A. Yes.
>
> Q. Okay. And - - and clearly, not your signature.
>
> A. Yes.

---

[2] *Id*. at p. 20–21 (deposition p. 77 line 20 through p. 78 line 1).

Later in the deposition, counsel inquired as to whether Plaintiff ever discussed the declaration with McKinley:[3]

> Q. Mr. Farris - - did Mr. Farris ever discuss the content of Exhibit 1 with you?
>
> A. No.
>
> Q. Did he ever tell you that there was a declaration with your name on it?
>
> A. No.
>
> Q. All right. And we don't have to do a handwriting sample because you know you didn't sign Exhibit 1, because that's not your signature, you were never presented it, and that's not how you sign your signature; true?
>
> A. Right.
>
> Q. True?
>
> A. Right.

Two days after McKinley's deposition, Plaintiff sent an "Amended Declaration of Gerald McKinley" to Defendant that includes the same statement as the previous declaration, but has a date of July 27, 2017 and a different signature. On August 8, 2017, Plaintiff filed a Third Amended Complaint. Together with more than fifty pages of exhibits, Plaintiff included the amended McKinley declaration. Plaintiff did not file a notice or otherwise alert the Court that the Third Amended Complaint included an amended version of the declaration that was previously filed three times or explain the reason for the amendment. As a result of these events, Defendant submits that Plaintiff forged McKinley's signature on the original McKinley declaration and then lied under oath in his deposition when he stated that McKinley came to his home to sign the declaration and discussed the contents with him.

---

[3] *Id*. at p. 21–22 (deposition p. 78 line 17 through p. 79 line 5).

In its motion, Defendant additionally challenges an authorization form that was submitted as signed by Troy McNaughton. Plaintiff submitted a request to Defendant for the production of the personnel file for Troy McNaughton. Together with the request for production, Plaintiff submitted a signed authorization purportedly signed by McNaughton. Defendant had difficulty scheduling a deposition with McNaughton due to his travel schedule, but Defendant interviewed McNaughton concerning this case. In the course of Defendant's interview, McNaughton denied signing the authorization form. McNaughton completed a declaration, dated August 7, 2017, stating that the signature on the authorization form is not his, he did not sign the form, and he did not give Plaintiff or Plaintiff's attorney permission to obtain his personnel file.[4] Specifically, McNaughton states in his declaration:

> 3. I have never seen this Records Authorization prior to today, August 7, 2017. That is not my signature on the Records Authorization—it is a forgery.
>
> 4. I never gave Billy Farris or his attorney, Bob Whitehurst, permission—written or oral—to obtain my personnel file or any of my records from BEK.

*Id.* Accordingly, Defendant asserts that Plaintiff forged McNaughton's signature on the authorization form.

Defendant filed the Motion to Show Cause for Forgeries and Perjury requesting that Plaintiff be sanctioned for acting in bad faith. Defendant asserts that the Court should exercise its inherent authority to sanction Plaintiff for forging two documents and for providing perjured testimony in his deposition. Defendant asserts that dismissal of Plaintiff's case is the appropriate sanction for Plaintiff's conduct.

In response to the motion, Plaintiff submits that he had permission to sign documents on behalf of McKinley and McNaughton. He attached his own affidavit to the response, in which he

---

[4] *See* Defendant's Motion to Show Cause for Forgeries and Perjury, ECF 60-1, at *35 (Declaration of Troy McNaughton).

states, "I signed the documents for them, after receiving their permission to sign the document," and "[i]t was my understanding that it was permissible to sign a document for a person, if they gave you permission to do so."[5] Plaintiff argues that there is no forgery because the documents at issue were signed with their permission. Plaintiff then argues that, in light of Defendant's alleged discriminatory employment practices, it would be unfair to give Defendant a blanket dismissal of the case based upon his mistaken belief that he could sign the documents on behalf of McKinley and McNaughton.

In its reply brief, Defendant points out that McKinley testified that Plaintiff never discussed the content of the declaration with him and never told him that there was a declaration with his name on it. Defendant submits that McKinley could not give Plaintiff permission to sign something that he knew nothing about. Similarly, McNaughton stated in his declaration that he did not sign the authorization and never gave Plaintiff or Plaintiff's attorney permission to obtain his personnel file. Defendant submits that neither McKinley nor McNaughton authorized Plaintiff to sign documents on their behalf and that Plaintiff's counsel failed to take appropriate corrective action upon learning of the forgeries.

Plaintiff filed a sur-reply re-asserting that there is no forgery if someone signs a document with authority to do so. He further submits that McKinley and McNaughton "had in fact signed other documents for Billy Farris in this case."[6] Plaintiff does not explain what documents McKinley or McNaughton signed for him or what bearing that would have on whether they gave Plaintiff permission to sign documents for them. Plaintiff then argues that McNaughton cannot be

---

[5] *See* Plaintiff's Response and Opposition to Defendant's Motion for Show Cause for Forgeries and Perjury, ECF 66-1, at *1 (Exhibit A – Affidavit of Billy Farris).
[6] *See* Plaintiff's Sur-Reply Response and Opposition to Defendant's Motion for Show Cause for Forgeries and Perjury, ECF 70, at *1.

believed because another employee, Andrew Gregory, stated that McNaughton has "lied on several different occasions."[7]

## DISCUSSION AND ANALYSIS

Federal courts have the inherent power to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc*., 501 U.S. 32, 43, 111 S.Ct. 2123, 2132 (1991) (quoting *Link v. Wabash R. Co*., 370 U.S. 626, 630–631, 82 S.Ct. 1386, 1388–1389 (1962)). "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Id*. (quoting *Anderson v. Dunn*, 6 Wheat. 204, 227, 5 L.Ed. 242 (1821)). A court's inherent power includes the power to punish for contempt and to preserve the integrity of the court by investigating and curing any fraud that is perpetrated upon the court. *Id*. at 44.

Recognizing its potency, courts exercise their inherent power with restraint and discretion. *Id*. Dismissal is an extreme sanction and the Court should consider lesser sanctions if appropriate. *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 77 (5th Cir. 2011). The harsh sanction of dismissal with prejudice is especially appropriate when the bad faith conduct is attributable to the client and not his attorney. *Id*.; *LBDS Holding Company, LLC v. ISOL Technology, Inc.*, 2015 WL 12765990, at *3 (E.D.Tex. May 15, 2015).

Perjured testimony by a plaintiff warrants dismissal with prejudice. *Id*. Here, Plaintiff testified under oath at his deposition that each declarant came to his home, separately, and signed their declarations after he discussed the contents of the declarations with them. Indeed, he testified that the "words came out of their mouth[s]."[8] In response to the motion for sanctions, however,

---

[7] *Id*. at 3.
[8] *See* Defendant's Motion to Show Cause for Forgeries and Perjury, ECF 60-1, at *6 (Oral Deposition of Mr. Billy J. Farris, III May 18, 2017 at p. 15 line 23).

Plaintiff does not dispute that McKinley did not come to his home to sign the declaration or discuss the contents with him. McKinley testified under oath at his own deposition that he did not sign the declaration, he did not discuss the contents of the declaration with Plaintiff and he did not know that the declaration even existed. Plaintiff was not truthful when he testified under oath that McKinley came to his home, signed the declaration, or discussed the contents with him. Plaintiff defied the oath that he took at his deposition and committed perjury.

Further, the evidence establishes that Plaintiff forged two documents that he used in an attempt to advance his claims in this case. Notably, there is no notation on either document that it was signed by permission instead of signed by the named signatory. Plaintiff now admits that he signed both McKinley's declaration and McNaughton's authorization form. McKinley testified under oath that he did not even know that there was a declaration with his name on it. McNaughton declared under penalty of perjury that he did not give Plaintiff permission to obtain his records. These statements directly contradict Plaintiff's unsupported assertion that he had permission to sign the documents on their behalf.

It is within a court's discretion to "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 45. "[T]ampering with the administration of justice . . . involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public." *Id*. at 44. Although severe, a dismissal with prejudice is an appropriate sanction when there is bad faith or a willful abuse of the judicial process. *Woodson v. Surgitek, Inc*., 57 F.3d 1406, 1417 (5th Cir. 1995). Dismissal is particularly appropriate "where a party manufactures evidence which purports to corroborate its substantive claims." *Johnese v. Jani-King*, 2008 WL 631237, at *2 (quoting *Vargas v. Peltz*, 901 F.Supp. 1572, 1581 (S.D.Fla. 1995)).

"Our system of justice is predicated upon truth. When self-interest gives way to lies, our whole system of justice breaks down and the rule of law suffers." *LBDS Holding Company, LLC*, 2015 WL 12765990, at *5. Plaintiff's conduct in this case is especially egregious, deceitful and repetitive. There is clear and convincing evidence that Plaintiff committed perjury in his deposition and submitted forged documents to the Court and to opposing counsel in an attempt to buttress his claims. One of the forged documents was used by Plaintiff in an attempt to acquire a co-worker's confidential personnel records. Upon learning of this conduct, counsel for Plaintiff failed to take appropriate actions to alert the Court or opposing counsel.

A dismissal with prejudice is the only effective and appropriate sanction in the context of Plaintiff's misconduct and it is the only sanction that will "deter future similar misconduct." *Brown*, 664 F.3d at 80. "[F]raud on the court uniquely calls for dismissal after its very first occurrence." *Johnese*, 2008 WL 631237 at *3. To best serve the interests of justice and to deter similar conduct in the future, the least severe sanction appropriate in this case is dismissal with prejudice. Additionally, Defendant should recover its attorney's fees and costs incurred in bringing the motion for sanctions.

## RECOMMENDATION

Based on the foregoing, the Court recommends that Defendant's Motion for Order to Show Cause for Forgeries and Perjury (ECF 60) be **GRANTED** and that the complaint be **DISMISSED** with prejudice.

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b). The written objections shall not exceed eight pages. *See* Local Rule CV-72(c).

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 14th day of December, 2017.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE